UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CRESTHAVEN-ASHLEY MASTER
ASSOCIATION, INC.,

      Plaintiff,                                **Case No.** _____

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

      Defendant.
_____/

**COMPLAINT SEEKING DECLARATORY RELIEF,
TO COMPEL APPRAISAL OF LOSS, OR, IN THE ALTERNATIVE, FOR DAMAGES**

Cresthaven-Ashley Master Association, Inc. ("Cresthaven" or "Insured"), sues Empire Indemnity Insurance Company ("Empire"), and alleges:

**NATURE OF ACTION**

1. This is an action seeking declaratory relief concerning Empire's denial of coverage for Hurricane Irma damages sustained by Cresthaven, to compel appraisal, or, in the alternative, for damages for breach of contract as described below.

**JURISDICTION**

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a). This action involves parties of diverse citizenship as set forth in paragraphs 4-5 below, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney's fees.

## VENUE

3. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district as the insured property is located in this district, and the events giving rise to the claim occurred in this district.

## PARTIES

4. <u>Cresthaven</u>: At all material times, Cresthaven was and remains a corporation organized and existing under the laws of the State of Florida, with its principal place of business in West Palm Beach, Florida.

5. <u>Empire</u>: At all material times, and upon information and belief, Empire was and is a corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business in Schaumburg, Illinois. Empire is part of the Zurich group of companies.

## FACTUAL BACKGROUND

## THE POLICY

6. Empire issued and delivered to Cresthaven a Commercial Property Policy, covering the time period March 17, 2017 to March 17, 2018 and bearing policy number PCP9490973-00 ("Policy"). A copy of the Policy is attached as **Exhibit A**.

7. The property insured under the Policy is a condominium complex consisting of 78 single-story buildings: 59 residential buildings, a clubhouse, a maintenance building, 16 laundry buildings, and a pool/spa area. Ex. A at Schedule SUM 01.

8. The Policy insures the 78 buildings on a replacement cost basis. *Id.* at Schedule SUM 03.

9. The Policy affords the following limits: a $29,993,365 Building Limit and a $100,000 Contents Limit, for a Total Insured Value of $30,093,365. *Id.* at Schedule SUM 01.

10. Pursuant to the Policy, Empire promised to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at Form CP 00 17 06 07.

11. "Covered Property" includes the 78 buildings insured under the Policy as well as Cresthaven's business personal property and the personal property of others. *Id.*

12. The Policy defines "Covered Causes of Loss" as "Risks Of Direct Physical Loss . . . ." *Id.* at Form CP 10 30 06 07.

13. A hurricane constitutes a Covered Cause of Loss under the Policy.

14. The Loss Conditions section of the Policy states in relevant part as follows:

> **E.   Loss Conditions**
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> \*\*\*
>
> **3.   Duties In The Event Of Loss Or Damage**
>    **a.**   You must see that the following are done in the event of loss or damage to Covered Property:
>
>      \*\*\*
>
>    **(7)**   Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
>
>    **(8)**   Cooperate with us in the investigation or settlement of the claim.

*Id.* at Form CP 00 17 06 07.

15. The following provision, reproduced in pertinent part below, was added to the Loss Conditions section of the Policy by endorsement:

**FLORIDA CHANGES**

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART

\*\*\*

H.  The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

  **(1)**  A claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.

\*\*\*

*Id.* at Endorsement CP 01 25 02 12.

16.  The Policy requires the Insured take all reasonable steps to mitigate damages:

E.  **Loss Conditions**

  The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\*\*\*

  3.  **Duties In The Event Of Loss Or Damage**

    a.  You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*

      **(4)**  Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

\*\*\*

*Id.* at Form CP 00 17 06 07.

Complaint.docx

## HURRICANE IRMA DAMAGES THE INSURED PROPERTY

17. Hurricane Irma struck Florida on September 10, 2017, causing substantial damage to the insured property.

18. Irma was the second hurricane amongst a trio of severe hurricanes spanning 2017-2018.

19. Hurricanes Harvey (August 2017), Irma (September 2017), and Michael (October 2018) stressed and limited the critical resources insureds require to timely respond to property damage claims, including the Insured's claim.

20. Qualified and available adjusters and experts have been and continue to be swamped with insurance claims, leading to long delays in documenting cause and scope of loss. Empire knows this from its own experience, even on Cresthaven's claim.

## THE INSURED'S INITIAL 2017 CLAIM AND EMPIRE'S INVESTIGATION

21. The Insured's initial claim for damage resulting from Hurricane Irma ("Initial Claim") was reported to Empire shortly after Irma struck – on September 20, 2017.

22. Empire owed the Insured a duty to fully, fairly, and promptly investigate the Initial Claim at its own expense.

23. Empire's investigatory duty is non-delegable; the Policy and governing law does not permit Empire to shift its investigatory burden to its Insured.

24. Empire ignored the Insured's repeated pleas for assistance with and involvement in the investigation.

25. Empire improperly shifted its investigatory burden to the Insured and repeatedly complained of the promptness of *the Insured's* investigation.

26. Empire's investigation of the 2017 Initial Claim was far from full and fair. For example, the carrier did not inspect each of the 78 insured buildings and based the scope of its purported investigation on an alleged statement from the Insured's property manager (that she denies).

27. Empire's investigation was also not prompt. For example, Madsen Kneppers & Associates, Empire's expert, inspected the property on September 25-29 and October 6, 2017, yet did not issue the first of its two reports until nearly 1 year later (on July 31, 2018).

### EMPIRE CONCLUDES ITS INVESTIGATION, AND THE MORNING OF JULY 27, 2018 DENIES THE INITIAL CLAIM AND WAIVES ANY RIGHT TO INSIST ON COMPLIANCE WITH POST-LOSS CONDITIONS

28. The morning of July 27, 2018, Cresthaven's public adjuster spoke with the Empire adjuster handling the Initial Claim.

29. On that call, Empire advised it had concluded its investigation and denied the Initial Claim on the basis that the Initial Claim did not exceed the deductible.

30. Empire thereby waived any right insist on the Insured's compliance with the Policy's post-loss conditions.

31. Empire did not seek permission to speak to residents and witnesses before denying the Initial Claim.

### EMPIRE'S SUBSEQUENT EMAIL DID NOT TRIGGER THE POLICY CONDITION REQUIRING SUBMISSION OF A PROOF OF LOSS

32. Later that day, Empire's adjuster sent the Insured's public adjuster an email the carrier claims constituted its request for a "Sworn Statement in Proof of Loss identifying the amount of [Cresthaven's] claim under oath, with supporting materials to explain that sworn amount."

33. Memorializing her call with the Insured's public adjuster, Empire's adjuster advised that the insurer had concluded its investigation and determined no payment was owed on the Initial Claim because the claim did not exceed the deductible: "Based on the results of [Empire's] investigation, the loss is under the applicable deductible per building. As such, no payment can be issued at this time." As an afterthought given the claim denial, Empire's adjuster then stated, "[p]lease provide us the following documentation in a timely manner: - Proof of Loss."

34. The Policy requires the Insured send Empire a proof of loss 60 days after the carrier requests "a signed, sworn proof of loss containing the information [Empire] requests to investigate the claim" and supplies the insured "the necessary forms":

> **E.** **Loss Conditions**
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
> \*\*\*
> **3.** **Duties In The Event Of Loss Or Damage**
>     **a.** You must see that the following are done in the event of loss or damage to Covered Property:
>         \*\*\*
>         **(7)** Send us a **signed, sworn** proof of loss **containing the information we request to investigate the claim**. You must do this within 60 days **after our request. We will supply you the necessary forms.**
>         \*\*\*

Ex. A at Form CP 00 17 06 07 (emphasis added).

35. Empire opened its July 27, 2018 email with an admission that it had already completed its investigation of the Initial Claim and denied any payment was owed, obviating the need for a proof of loss.

36. Empire failed to request a "signed, sworn" proof of loss.

37.     Empire failed to list the information it was requesting be included on the proof of loss form.

38.     Empire failed to supply the Insured with the "necessary forms."

39.     Empire's July 27, 2018 email contains no language suggesting forfeiture of benefits would be the consequence of a failure to comply.

40.     Empire's July 27, 2018 email did not trigger Loss Condition 3.a.(7) – the 60-day time period to submit a proof.

**DESPITE EMPIRE'S WAIVER, THE INSURED CONTINUED COOPERATING WITH THE CARRIER AND ATTEMPTED TO COMPLY WITH THE POLICY'S POST-LOSS CONDITIONS**

41.     Nowithstanding Empire's July 27, 2018 denial, the Insured continued cooperating and attempted to comply with the Policy's post-loss conditions by submitting a signed, sworn proof of loss and provided some of the documents requested by Empire.

42.     On September 25, 2018, the Insured submitted a signed, sworn proof of loss indicating the time and origin of the loss; the occupancy, title and interest in, and changes to the property; and the total amount of insurance on the property.

43.     The Insured explained in its letter accompanying the proof (as it had many times before) that the total Initial Claim amount could not be supplied pending receipt of its experts' reports.

44.     The limited pool of qualified and available experts, including those retained by Cresthaven, were overwhelmed by the number of insurance claims, leading to understandable delays in assessing cause and scope of loss.

45.     The Insured diligently followed up *via* repeated calls and emails to its experts, to ensure the reports were completed as soon as possible.

46. The Insured enclosed with its September 25, 2018 proof of loss the temporary repair invoices Empire requested on July 27, 2018. The Insured incurred those costs to mitigate its damages, as required by the Policy and governing law.

47. The remainder of the information and documents requested by Empire on July 27, 2018 were provided as soon as the experts' reports and damages/repair estimate were completed and reviewed by the Insured:

- Damages/Repair Estimate
    - Elements Restoration estimate completed May 15, 2019; estimate sent to Empire a few days later – on May 20, 2019.
- AAMA 511 Visual and Water Testing Report
    - Report completed March 27, 2019; report sent to Empire a few days later – on April 2, 2019.
- Other Claim-Supporting Documentation
    - The GFA International Inc. storm damage evaluation report is dated November 29, 2018 but was not finalized until February 15, 2019 (follow up site visits were required); the almost 3,000-page report was sent to Empire on April 2, 2019, a few days after the Insured had the opportunity (on March 29, 2019) to review the report.

48. The Insured's September 25, 2018 proof is timely under the Policy even if Empire's July 27, 2018 email was sufficient to trigger Loss Condition 3.a.(7) as the carrier claims (it did not).

**ON APRIL 2, 2019, THE INSURED REQUESTS THE INITIAL CLAIM BE REOPENED, TRIGGERING EMPIRE'S DUTY TO RE-INSPECT AND INVESTIGATE THAT CLAIM**

49. Empire adjusted the Initial Claim, advised the Insured on July 27, 2018 that it had completed its investigation and concluded no payment was owed, and closed its file on the Initial Claim on November 14, 2018.

50. The Insured diligently continued to investigate its damages following Empire's denial.

51. On April 2, 2019, the Insured sought to have the Initial Claim "reopened" pursuant to the following endorsement in the Policy:

**FLORIDA CHANGES**

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART
\*\*\*
**H.** The following provisions are added to the **Duties In The Event Of Loss Or Damage** Loss Condition:
   **(1)** **A** claim, supplemental claim or **reopened claim for loss or damage caused by hurricane ... is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall** . . . . (Supplemental claim or **reopened claim means an additional claim for recovery from us for losses from the same hurricane ... which we have previously adjusted pursuant to the initial claim.**)
\*\*\*

Ex. A at Endorsement CP 01 25 02 12 (emphasis added).

52. By April 2, 2019, the Insured's experts had completed and issued their reports, providing a comprehensive evaluation of the damages incurred.

53. The Insured accompanied its April 2, 2019 request with the fruits of that investigation – 3,500 pages of reports and photographs from its experts.

54. Notice of the claim – an "additional claim for losses from the same hurricane (Irma)" that Empire had adjusted in 2018 – was timely under Endorsement CP 01 25 02 12 (the 3-year window does not expire until September 10, 2020).

55. The Insured's April 2, 2019 request triggered Empire's duty to re-inspect the insured property and investigate the claim.

## IN RESPONSE, AND WITHOUT RE-INSPECTING OR INVESTIGATING, EMPIRE DENIES THE CLAIM SEEKING A FORFEITURE OF BENEFITS

56. Without re-inspecting the insured property and investigating the Insured's 2019 claim, and as a knee-jerk reaction to the preliminary damages estimate ($19,000,000.00) set forth in the Insured's April 2, 2019 letter, Empire denied payment was owed *via* letters dated April 24, 2019 and May 16, 2019. Empire's denial was based on the Insured's purported breach of the Policy's cooperation and proof of loss conditions – Loss Conditions 3.a.(7)-(8).

57. Empire denied the claim, seeking a forfeiture of the Policy's benefits despite the following:

   a) Knowing qualified and available adjusters and experts were backlogged responding to insurance claims;

   b) The Insured had been cooperative despite Empire's waiver of the Policy's post-loss conditions;

   c) The Insured's April 2, 2019 request was to reopen the Initial Claim; and

   d) Empire did not demand in response to the Insured's April 2, 2019 request a proof of loss or documents/information per Loss Conditions 3.a.(7)-(8).

58. Empire assumes the passage of time has hindered its ability to investigate the damages and speak to residents and witnesses. Empire did none of these things before reaching its decision to deny payment because the loss fell within the Policy deductible, and has done nothing since April 1, 2019 to convert its assumption into fact.

59. Cresthaven has not repaired the insured property save mitigation of loss (in compliance with the Policy and governing law).

### ON MAY 20, 2019, THE INSURED SUBMITS A SIGNED, SWORN PROOF OF LOSS IN SUPPORT OF ITS 2019 CLAIM

60. On May 20, 2019, as soon as the Insured had its expert's repair estimate in hand, the Insured provided Empire with a detailed, signed and sworn proof of loss, claiming $17,823,341.02 in covered damages.

61. The Insured's April 2, 2019 request and May 20, 2019 proof triggered Empire's duty to re-inspect the insured property and investigate the claim.

62. Even if not considered a request to reopen the Initial Claim (it was), the April 2, 2019 and May 20, 2019 submissions are timely. Endorsement CP 01 25 02 12 expressly provides that a claim for hurricane-related damage in Florida can be pursued so long as it is perfected within three years of landfall (here, September 10, 2020). The Insured's April and May 2019 submissions are comfortably within that time frame.

### ON JUNE 11, 2019, THE INSURED PLEADS AGAIN WITH EMPIRE TO REOPEN THE CLAIM AND UNDERGO A PROMPT INVESTIGATION; EMPIRE REFUSES

63. On June 11, 2019, the Insured implored Empire once again to reopen the Initial Claim, accept the May 20, 2019 proof of loss, and begin discharging its post-loss obligations.

64. The Insured asked that Empire re-inspect the insured property and speedily conclude its investigation, emphasizing that time was of the essence.

65. Empire provided no substantive response; Empire's adjuster wrote only to advise that he was going on vacation and would be unavailable for several weeks.

### GENERAL ALLEGATIONS

66. Cresthaven has engaged undersigned counsel to represent it in this action, and has agreed to pay a reasonable fee for services rendered.

67. All conditions precedent to bringing this action have been performed, occurred, or have otherwise been waived.

## **COUNT I – DECLARATORY RELIEF**

68. Cresthaven realleges paragraphs 1 through 67 above.

69. Empire claims the Insured failed to timely submit a proof of loss causing prejudice to its ability to conduct an investigation, justifying denial of the Insured's claim.

70. The Insured disagrees with Empire's assertion as set forth above; either viewed as a continuation of the Initial Claim or as a re-opened claim, Empire has no basis to claim prejudice or a material failure by the Insured to comply with the Policy's post-loss conditions.

71. Cresthaven is in doubt as to its rights under the Policy, including its right to seek appraisal of loss due to Empire's refusal to re-open the claim and pay benefits due under the Policy.

**WHEREFORE**, Empire requests that this Court enter judgment declaring that:

a. Cresthaven has not materially breached any of the Policy's post-loss conditions to justify a denial of coverage by Empire;

b. Alternatively, if it has failed in some material way to comply, Empire has not been prejudiced by that non-compliance;

c. By determining the covered loss fell within the Policy deductible, Empire waived any right to insist on further compliance with post-loss conditions; and

d. For such other relief as may be appropriate, including ordering Empire to proceed with appraisal of loss as sought in the next Count of this Complaint, and for attorney's fees pursuant to Fla. Stat. § 626.9373 and for costs of this action.

## COUNT II – APPRAISAL OF LOSS IS APPROPRIATE

72. Cresthaven realleges paragraphs 1 through 67 above.

73. Empire has not entirely denied coverage for Cresthaven's loss – its July 27, 2018 email agreed that the Insured had sustained covered damage, but not enough to exceed the amount of the Policy's deductible.

74. The Policy contains a dispute resolution mechanism designed to resolve disputes over scope, cause, and price as follows:

> **Mediation Or Appraisal**
> If we and you:
> ***
> **B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.
> Each party will:
> **1.** Pay its chosen appraiser; and
> **2.** Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, we will still retain our right to deny the claim.
> ***

Ex. A at Endorsement IL 01 12 06 10.

75. If this Court determines Empire's position on forfeiture of benefits is unsupported by the facts and law as the Insured contends, then it is the Insured's position that the claim is ripe for appraisal, and Cresthaven will promptly name its appraiser in compliance with applicable law.

76. Cresthaven asserts this claim to preserve its right to appraisal, as it represents a speedy, extra-judicial process for resolving the scope, cause, and price of any covered damage.

**WHEREFORE**, Cresthaven demands entry of judgment determining that it has complied with its post-loss conditions allowing it to demand appraisal of loss, name its appraiser, and require Empire to comply with its obligations incident to appraisal. The Court should retain jurisdiction over the appraisal once ordered, including an order confirming the award, and awarding Cresthaven its attorney's fees pursuant to Fla. Stat. § 626.9373, costs of this action, and for such other relief as may be appropriate.

## COUNT III – BREACH OF CONTRACT

77. Cresthaven realleges paragraphs 1 through 67 above.

78. <u>Enforceable contract</u>:  At all times material to this action, Cresthaven and its 78 buildings were insured under the Policy, which is an enforceable contract under the laws of the State of Florida.  All conditions precedent for coverage under the Policy have been satisfied.

79. <u>Duty</u>:  The Policy obligates Empire to, *inter alia*, indemnify the Insured for its losses, except as may be limited by exclusions or other limitations.

80. <u>Breach</u>:  Empire, through the acts of its agents, servants, and/or employees, failed to perform its obligations under the Policy as alleged herein and thus breached the Policy by failing to indemnify the Insured for its losses.

81. <u>Damages</u>: As a direct, foreseeable, and proximate result of Empire's breach of its obligations under the Policy, the Insured has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, Cresthaven-Ashley Master Association, Inc., demands judgment against Defendant, Empire Indemnity Insurance Company, for damages in an amount to be proven at trial, the costs of this action, pre- and post-judgment interest, attorney's fees pursuant to Fla. Stat. § 626.9373, and any other relief this Court deems equitable, just, and proper.

## **JURY DEMAND**

Plaintiff, Cresthaven-Ashley Master Association, Inc., demands a trial by jury of all issues so triable as a matter of right.

Dated: July 15, 2019

                                              Respectfully submitted,

**REED SMITH LLP**
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone: (786) 747-0200
Fax: (786) 747-0299

/s/ *R. Hugh Lumpkin*
R. Hugh Lumpkin
Florida Bar No. 308196
hlumpkin@reedsmith.com
Matthew B. Weaver
Florida Bar No. 42858
mweaver@reedsmith.com
Ashley B. Jordan
Florida Bar No. 71924
ajordan@reedsmith.com

*Counsel for Plaintiff*

Co-Counsel for Plaintiffs:

Mark A. Boyle, Esq.
Florida Bar No. 5886
Mboyle@insurance-counsel.com
Eservice@insurance-counsel.com
BOYLE & LEONARD, P.A.
2050 McGregor Boulevard
Fort Meyers, Florida 33901
Tel: (239) 337-1303
Fax: (239) 337-7674