UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80959-CIV-SINGHAL/MATTHEWMAN

CRESTHAVEN-ASHLEY MASTER
ASSOCIATION, INC.,

    Plaintiff,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

## OPINION AND ORDER

**THIS CAUSE** is before the Court upon Defendant's ("Defendant" or "Empire") Corrected Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed on January 20, 2022 (the "Motion") (DE [154]).  Plaintiff ("Plaintiff" or "Cresthaven") filed a Response on February 10, 2022 (the "Response") (DE [169]).  Defendant filed a Reply on March 3, 2022 (the "Reply") (DE [181]).  The Motion is now ripe for this Court's consideration.

**I.   BACKGROUND**

This action involves an insurance dispute related to property damage Plaintiff suffered because of Hurricane Irma.  Empire issued a commercial insurance policy to Cresthaven insuring Cresthaven's multi-building condominium complex. (DE [136], at 1).  The policy includes three provisions of Ordinance or Law Coverage ("OLC"): Coverage A – Coverage for Loss to the Undamaged Portion of the Building; Coverage B – Demolition Cost Coverage; and Coverage C – Increased Cost of Construction Coverage. (DE [112-1], at 76).  Coverage B is not in dispute.

Coverage A and Coverage C both apply to buildings that have sustained covered direct physical damage. *Id.*  Coverage A provides that Empire "will pay . . . for the [1] <u>loss</u>

<u>in value</u> of the undamaged portion of the building [2] as a consequence of enforcement of an ordinance or law that [3] requires demolition of undamaged parts of the same building." (DE [136], at 2) (emphasis added).  Coverage C provides that Empire "will pay the [1] <u>increased cost</u> to [reconstruct damaged and undamaged portions of the building] when the increased cost is a [2] consequence of enforcement of the minimum requirements of the ordinance or law." *Id.* (emphasis added).  The Policy also contains an appraisal provision, which provides that Empire "will still retain [its] right to deny the claim" if there is an appraisal." *Id.* at 3.

In 2019, Plaintiff initiated the present action seeking declaratory judgment that it did not breach any post-loss duties, the enforcement of the appraisal provision, and damages for breach of contract. *See* (DE [1]).  Appraisal has since taken place and an award was issued, which determined the cause and extent of property damage and the amount of repairs. *See* (DE [136], at 4–5).  Defendant has paid the actual cash value amount, as determined in the award, leaving only the replacement cost value ("RCV") and OLC amounts unpaid. *Id.*  Plaintiff's only remaining claim is for the unpaid OLC amounts. *Id.*  With respect to the OLC amounts, the award states that the umpire and Empire's appraiser "conducted an assessment of the amount of the loss sustained due to or related to Hurricane Irma, including determinations as to the cost of repair or replacement, and for related ordinance or law." (DE [112-4, at 4]).  Cresthaven's appraiser maintains that the "sheathing work" identified in the award requires removing over 520,000 square feet of existing, undamaged roof sheathing and replacing it with 5/8 CDX plywood, which is required by applicable building codes so that permits may be issued. *See* (DE [115-11] ¶¶ 6–10).  By contrast, Empire contends that the award does not specifically identify any building code, law, or ordinance that would require this demolition

of sheathing (DE [136], at 6).  On December 22, 2021, this Court denied the parties' cross-motions for summary judgment. *See* (DE [136]).  This Court held that Cresthaven is required to actually spend the amount it seeks reimbursements for due to Ordinance and Law expenses. *Id.*  Empire now moves to dismiss the complaint without prejudice for lack of subject-matter jurisdiction.

## II. <u>LEGAL STANDARD</u>

Rule 12(b)(1) applies to challenges of a court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Generally, the plaintiff must allege, with particularity, facts necessary to establish jurisdiction and must support his allegation if challenged to do so. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000).  Importantly, "[s]ubject-matter jurisdiction can never be waived or forfeited.  The objections may be resurrected at any point in the litigation—even on appeal—and a valid objection may lead a court midway through briefing to dismiss a complaint in its entirety. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'"  *McElmurray v. Consol. Gov't of Augusta— Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919

3

F.2d 1525 (11th Cir. 1990)). "Factual attacks," on the other hand, serve to "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" *Id.*

### III. DISCUSSION

#### A. The Arguments

Defendant's primary argument is that, at this point in the litigation, Cresthaven's Complaint no longer presents a justiciable claim under Article III. *See* Motion, at 4. Specifically, Defendant argues that Cresthaven's alleged entitlement to OLC benefits is not ripe because the benefits are not yet due. *Id.* According to Defendant, any opinion flowing from a trial on the remaining issues would thus constitute an improper advisory opinion. *Id.* First, Defendant asserts that the OLCs are not at issue and may never be because the Policy's Replacement Cost Coverage has never been triggered, absent completed and paid-for repairs. *Id.* at 5. Defendant explains that it does not owe benefits under Parts A or C of the OLC unless "the Replacement Cost Coverage Option applies,", or "the property is actually repaired and replaced." *Id. See Diamond Lake Condominium Ass'n, Inc. v. Empire Indemnity Ins. Co.*, 2021 WL 6118076, at *3 (M.D. Fla. Dec. 27, 2021) (discussing how insured's claim for unpaid OLC benefits after an appraisal award was "unripe" in the absence of completed repairs).

Second, Defendant contends that, even if the repairs were completed, the OLC benefits would never be at issue unless a specific ordinance or law actually required demolition of undamaged property or increased costs of construction. *Id.* at 7. Defendant explains that Cresthaven has never identified a specific ordinance or law that applies. *Id. See Buckley Towers Condominium, Inc. v. QBE Ins. Corp.*, 395 Fed. Appx. 659, 665 (11th Cir. 2010) (finding insured was not entitled to OLC benefits because it never incurred

4

increased damages due to enforcement of laws or ordinances). Third, Defendant asserts it does not presently owe OLC benefits under Part A because liability is limited to the amount the insured would actually spend to make ordinance-or-law-mandated repairs, and Cresthaven has never spent any amount on repairs required by any ordinance or law. *See* Motion, at 8. Thus, according to Defendant, there is no way for the parties to determine, solely based on the appraisal award at this stage of the litigation, how much Cresthaven would actually spend to make ordinance-or-law-mandated repairs. *Id.*

Finally, Defendant contends that the hypothetical and contingent nature of Cresthaven's alleged entitlement to OLC benefits precludes its claims from being ripe. *Id.* at 9. Moreover, Defendant explains that the lack of imminence of harm to Cresthaven further bolsters the finding that their claims are unripe. Defendant cites *Bowen v. First Family Financial Services, Inc.*, 233 F.2d 1331, 1314 n.7 (11th Cir. 2000) for the proposition that "[t]he ripeness doctrine . . . asks whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." Here, according to Defendant, Cresthaven's interest in OLC benefits only accrues when they complete the repairs, a specific ordinance or law requires additional expenses, and Empire refuses to pay those expenses. *See* Motion, at 9–10. Defendant asserts this is "too remote to be labeled a controversy." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1348 (11th Cir. 1999).

Cresthaven, in turn, responds that standing and ripeness is satisfied because Cresthaven is seeking a specific, concrete amount of damages that are currently owed under Coverage A. *See* Response, at 3. According to Cresthaven, the plain meaning of the terms and phrases used in Coverage A unambiguously establish that Cresthaven's

5

right to payment is not conditioned on the completion of repairs or expenditure of money. *Id.* Cresthaven submits in the alternative that, if the loss payment provisions are deemed ambiguous, they should be construed in Cresthaven's favor to require payment regardless of whether repairs have been made. *Id.* at 10. Second, Cresthaven asserts that Empire misinterprets the Policy and relies on inapposite case law involving different language found only in Coverage C and standard replacement cost provisions, not Coverage A. *Id.* at 11. Finally, Cresthaven argues that Empire improperly attacks the merits of the case and ignores evidence in the record beyond what was before the Court at summary judgment. *Id.* at 15.

### B. The Law

Standing is an unavoidable requirement of Article III jurisdiction because it embodies the central principle of the "Case or Controversy" requirement and the separation-of-powers principles underlying it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must (1) have suffered or be imminently threatened with a concrete and particularized injury in fact (2) that is fairly traceable to the defendant's conduct and (3) is likely to be redressed by a favorable judicial decision. *Id.* "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.'" *Id.* at 564 n.2 (cleaned up). Thus, the Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (cleaned up). If a plaintiff's threatened injury rests on a "speculative chain of possibilities," it is not sufficiently "certainly impending" to constitute injury in fact. *See id.* at 414.

6

The standing doctrine's close cousin is the ripeness doctrine. Ripeness asks at what stage a case is sufficiently mature to satisfy Article III. It involves both jurisdictional and prudential concerns. *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. (1984). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes. The doctrine seeks to avoid entangling courts in the hazards of premature adjudication." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). Ripeness analysis requires the Court to consider (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Id.* (citing *Abbot Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). Thus the Court must determine "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).

**C. The Analysis**

Both Coverage A and Coverage C require, as a condition of payment, that the "loss in value" or "increased cost" occur as a "consequence of enforcement" of an ordinance or law. *See* (DE [136], at 2). Several thresholds must be crossed before payment is owing. First, there must be an applicable ordinance or law that, if enforced, could cause a loss in value of the undamaged portion of the building or increased cost to reconstruct damaged and undamaged portions of the building. Second, the applicable ordinance or law must actually be enforced. Third, the applicable ordinance or law must actually cause the "loss in value" or "increased cost" mentioned above.

Plaintiff argues that it is seeking a specific, concrete amount of damages owed

7

under Coverage A and that the plain meaning of Coverage A establishes its right to payment, which is not conditioned on the completion of repairs or expenditure of money. The Court agrees that the language of Coverage A clearly indicates that Plaintiff is entitled to payment for (i) any "loss in value" of undamaged portions of the building or (ii) "increased cost" to reconstruct portions of the building that occur as a "consequence of enforcement" of an ordinance or law.  However, the issue is not whether the policy language prescribes this entitlement to Plaintiff.  It does.  Rather, the issue is whether the pre-conditions of payment under this provision are present.  They are not.  Plaintiff has indicated no specific ordinance or law that, if enforced, would cause a loss in value of the undamaged portion of the building or increased cost to reconstruct damaged and undamaged portions of the building.  Plaintiff has not shown that such ordinance or law has actually been enforced.  Plaintiff has not shown that enforcement has actually caused the "loss in value" or "increased cost."  And finally, the Defendant has not denied payment upon all these conditions being satisfied—they never have been satisfied.  The Court is left to ponder whether this "speculative chain of possibilities" will occur and cause Plaintiff injury.  Thus, Cresthaven's contentions are more accurately classified as "allegations of possible future injury," which are insufficient to constitute certainly impending injury and satisfy the first element of standing. *See Clapper*, 568 U.S. at 409.

Relatedly, the issues are not ripe because they are not fit for judicial review at this point in time.  If forced to resolve the issues at this stage, the Court would have to engage in speculation and would become entangled in "the hazards of premature adjudication," *see Digital Properties*, 121 F.3d at 589, because the issues are simply not "sufficiently mature . . . to permit effective decisionmaking," see *Cheffer*, 55 F.3d at 1524.  And, consistent with the standing analysis, no applicable ordinance or law, which would cause

8

"loss in value" or "increased cost," has been identified. Nor has any such ordinance or law actually been enforced. And above all that, Defendant has not denied payment upon identification and enforcement of an applicable ordinance or law. All of these events need to play out for this Court to engage in "effective decisionmaking."

Second, Cresthaven asserts that it will face the self-evident hardship of being denied insurance proceeds as well as increased construction costs due to economic supply chain shortages. *See* Response, at 10 n.8. The Court acknowledges that Cresthaven has faced significant hardships—from the property damage caused by Hurricane Irma in the first place—to the difficulties of rebuilding amidst significant construction cost increases. However, Defendant has paid Cresthaven the significant ACV portion of the appraisal award, and Cresthaven is currently in the process of rebuilding. While the Court understands Cresthaven would prefer to receive the OLC insurance proceeds now, it is not clear how a delay in their receipt would amount to significant hardship to Cresthaven. Moreover, if the Court were to award OLC insurance proceeds now, based on the estimate in the award, it is entirely possible that the actual Ordinance-or-Law-related costs are greater than the amount estimated by the award. In other words, receiving the insurance proceeds now creates the risk of underestimating the future, actual Ordinance-or-Law related costs. Thus, the Court could potentially create hardship to Plaintiff if it attempts to pick this unripe fruit.

The Court finds, at this point in the litigation, this Action no longer presents an actual "Case or Controversy" under Article III because it is unripe and there is no injury-in-fact. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Corrected Motion to Dismiss for Lack of Subject Matter Jurisdiction (DE [154]) is **GRANTED**. This **CAUSE** is **DISMISSED**

**WITHOUT PREJUDICE**.  The Clerk of the Court is directed to **CLOSE** the case.  Any pending motions are **DENIED as moot**.

      **DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 24th day of March 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF